those of the crew forty dollars; whereas, so the witness stated, the usual wages on board merchant vessels is but fifteen dollars a month.

It was testified to by Dr. Wiley, that after the arrival of the prisoner here, he admitted, that he had made about fifteen thousand dollars, was willing to give any lawyer two thousand dollars who would free him from his embarrassment; and that he had been inadvertently drawn into the affair at a dinner party at Baltimore.

The prosecution having rested, testimony was introduced on the part of the defendant for the purpose of showing that the Endymion was engaged in getting ivory and gold dust, and at no time had any slaves on board.

The judge said there was no proof in the case that any slaves were ever put on board; and he therefore deemed the inquiry a waste of time.

The case was summed up by respective counsel; and the several points of law, as above stated, were urged to the jury.

The judge, in his charge to the jury, instructed them that if this vessel had been fitted out for any other purpose than the transportation of slaves, it would have been in the power of the defendant to have shown it; that in the absence of all testimony on this point, the inference was strong against him; and that if they believed that the defendant and his crew had any agency, or were concerned in procuring slaves on the coast of Africa, and transporting them on board any other vessel, he came within the act, and it would be their duty to convict him.

It being late in the afternoon, the jury were directed by the judge to seal their verdict. and bring it into court in the morning. At this time eleven of the jurors returned into court, and it being proved to the court that one of them on his way to the court had fallen down in a fit, and that the state of his mind was such as to render him incapable of a discreet exercise of his duty on being polled, the court ordered the jury to be discharged, and the prisoner to be remanded for trial.

---

## Case No. 14,455.
### UNITED STATES v. ANDREWS.
[2 Paine, 451.] [1]

Circuit Court.[2]

INDICTMENT—CONCLUSION—STATUTE.

An indictment for an offence created by statute, charging the same to have been committed "in contempt of the laws of the United States of America," without referring to the statute, is bad.

The prisoner [John Andrews] was indicted for a perjury, under the thirteenth section of

1 [Reported by Elijah Paine, Jr., Esq.]
2 [District and date not given. 2 Paine includes cases decided between 1827 and 1840.]

act of 3d March, 1825, c. 506 (7 Laws U. S. p. 397, c. 506 [4 Stat. 118]), committed while under examination as a witness, before the district judge, in the matter of an assault with a dangerous weapon charged against other parties. The indictment contained two counts, both concluding. "in contempt of the laws of the United States of America." It was moved "in limine," to quash the same, upon the ground that it did not adequately charge the offense to have been committed against any statute of the United States, and could not be sustained as at common law; and the following cases were cited in support of the motion: Com. v. Stockbridge. 11 Mass. 280; U. S. v. Davis [Case No. 14,930]; Starkie, Cr. Law, 253; 4 Bl. Comm. 119, 123.[1]

J. A. Hamilton, for the United States.
W. Q. Morton, for the prisoner.

After advisement, THE COURT, per THOMPSON, Circuit Justice, ordered that the indictment be quashed.

---

1 Whether the statute be public or private, the indictment must state all the circumstances which constitute the definition of the offence in the act, so as to bring the defendant precisely within it: and must with certainty and precision charge him with having committed or omitted the acts constituting the offence, under the circumstances and with the intent mentioned in the statute. 1 Hale, P. C. 517, 526, 535. The defect will not be aided by verdict (2 East, 333), nor by a conclusion contra formam statuti (2 Hale, P. C. 170; Fost. Crown Law, 423, 424). See 8 Term R. 536. Nor will the fullest description and legal definition of the offence be sufficient without keeping close to the expressions of the statute (Fost. Crown Law, 424), which should be pursued in the precise and technical language used in the statute (Id.; 2 Hawk. P. C. c. 25, § 110). Thus, for rape, no expressions of force and carnal knowledge will excuse the omission of the word "ravished." 2 Hawk. P. C. c. 23. § 77. So if a statute make it criminal to do an act "unlawfully and maliciously," it must be stated to have been done "unlawfully." "Feloniously, voluntarily and maliciously." is not enough. Ryan & M. Cr. Cas. 239, 247. But where a word not in the statute is substituted in the indictment for one that is, and the word thus substituted is equivalent to the word used in the statute. or is of more extensive signification than it. and includes it. the indictment will be sufficient. As if the word "knowingly" be in the statute, and the word "advisedly" substituted for it in the indictment (1 Bos. & P. 181); or the word "wilfully" in the statute, and "maliciously' 'n the indictment, (the words "advisedly" and "maliciously" not being also therein,) the indictment would be sufficient. Yet it is better to pursue strictly the words of the statute; as the court. in favorem vitæ. are sometimes inclined to listen to and countenance very nice distinctions upon the subject. Where the subject of the indictment cannot be brought within the meaning of the statute without the aid of extrinsic evidence, it is necessary, besides charging the offence in the words of the statute, to aver such facts and circumstances as may be necessary to bring the matter within the meaning of it. Matt. Dig. 200, 275; 2 Leach, Crown Cas. 664; 2 East, P. C 928.

And if there be any exception contained in the same clause of the act which creates the offence, the indictment must show. negatively, that the defendant, or the subject of the indictment. does not come within the exception. Id. 275; 1 Term R. 141; 15 East. 456; 1 East. 643; 2 Leach, Crown Cas. 580, Russ. & R. 174, 321. But

. UNITED STATES (ANDREWS v.).    See
Case No. 381.

---

## Case No. 14,456.

### UNITED STATES v. The ANN.

[Cited in U. S. v. Arnold, Case No. 14,469.
Nowhere reported; opinion not now accessible.]

---

## Case No. 14,457.

### UNITED STATES v. The ANNA.

[2 Am. Law Reg. 421.]

District Court, D. Maryland. Feb., 1854.[1]

SHIPPING — PUBLIC REGULATIONS — FORFEITURE —
ILLEGAL NUMBER OF PASSENGERS—INTEN-
TION—PERSONAL LUGGAGE.

1. The limitation of two passengers for every
five tons of a vessel's measurement, by the 1st
and 2d sections of the passenger act of 1819
[3 Stat. 488], has been repealed by the 10th sec-
tion of the act of 1848 [9 Stat. 220].

2. No conviction can be had under the passen-
ger act of 1847 [9 Stat. 127], except where an
illegal number of passengers has been taken on
board at a foreign port, with the intention to
bring them into the United States, and where
such illegal number has been actually brought
in; or where an illegal number has been taken
on board at a port in the United States, with
the intention to transport them to a foreign port.
The mere intention to violate the law, formed
in a foreign country, and not completed by the
illegal importation, is insufficient.

---

if an exception or proviso be in a subsequent
clause or statute (1 Term R. 320), or although in
the same section. yet if it be not incorporated
with the enacting clause by any words of refer-
ence (1 Barn. & Ald. 94), it is in that case mat-
ter of defence for the other party, and need not
be negatived in the pleading (Matt. Dig. 275;
Archb. Cr. Pl. 48. 3 Chit. Burn, Just. 456).

It is generally, but not always, sufficient, in an
indictment for a misdemeanor created by statute,
to describe the offence in the words of the stat-
ute. People v. Taylor, 3 Denio, 91. In an in-
dictment for setting on foot a lottery, contrary
to the statute, it is essential to specify the pur-
pose for which the lottery was made; that being
a part of the statute description of the offence.
But a general statement of the purpose for which
the lottery was made, is not enough. Some
further description must be given where it is
practicable to do so. Id.

There is no necessity to recite any public stat-
ute on which the indictment is founded: for the
judges, ex officio. take notice of all public stat-
utes. Dyer 155a: 2 Hawk. P. C. c. 25. § 100;
1 Saund. 153, note 3. But if it be recited with a
material variance. and the indictment conclude
"contrary to the form of the said statute," it
will be fatal. though if it conclude generally, as,
"contrary to the form of the statute in such case
made and provided," without referring to the
recited statute. the recital may be rejected as
surplusage. 2 Hawk. P. C. c. 25, § 101; 6
Term R. 776. But the parts of a private act on
which an indictment is framed, must be set out
specially, as other facts. and a variance properly
shown to the court will be fatal. 2 Hawk. P.
C. c. 25. § 105. Neither the day on which a
private statute was enacted, nor the title or pre-
amble, need in any case be stated. But if set
forth, it must be done with correctness, or, if the
indictment conclude contrary to the statute afore-
said. the variance will be fatal. 1 Chit. Cr. Law,
277; Holt. 662; 2 Hawk. P. C. c. 25, § 106.

[1] [Affirmed in Case No. 14,458.]

3. In the determination of the liability of a
vessel, under the passenger act of 1847, the court
will be guided by her custom house measurement,
which has been delivered by the surveyor of the
port to the master or owner of the vessel, in pref-
erence to any subsequent measurement on the
part of the government. .

4. The term "personal luggage," in the act of
1847, only includes wearing apparel, bed and bed-
ding of the passengers, required for their com-
fort and convenience of the voyage, and does not
extend to furniture, stores, or other articles not
necessary for their personal convenience.

5. The principles by which the court will be
guided in the determination of the cases under
the passenger act of 1847.

This was a libel filed by the district attor-
ney of the United States, to enforce a for-
feiture, under the acts of congress passed in
relation to passenger vessels.

William Meade Addison, U. S. Dist. Atty.
Brown & Bume, for claimants.

GILES, District Judge. The case of U.
S. v. The Anna, belonging to Bremen, has re-
ceived the careful consideration of the court,
since its adjournment. Its trial occupied the
attention of the court for twelve days, and I
do but justice to the learned counsel engaged
in it, when I say. that the investigation has
been conducted throughout, with a learning
and ability, and an industry fully commen-
surate to the large amount depending on its
issue, and the important interests connected
with it. The barque Anna was seized by the
collector of this port, on the 24th of Decem-
ber last, for an alleged violation of the acts
of congress passed in reference to passenger
vessels. She was claimed to be forfeited by
the 2d section of the act passed 22d Febru-
ary. 1847. That section reads as follows:
"That if the passengers so taken on board of
such vessel, and brought into, or transported
from the United States aforesaid, shall ex-
ceed the number limited by the last section
to the number of twenty in the whole, such
vessel shall be forfeited to the United States
aforesaid, &c." The said barque was also
claimed to be forfeited under the 2d section
of the act of 1819, entitled "An act relating to
passenger ships and vessels." and which act
limited the number of passengers to be car-
ried in any vessel to two for every five tons
of the custom house measurement of such
vessel. The seizure was regular. and no ques-
tion has been raised in reference to it. The
libel in this case was filed by the attorney for
the United States. to enforce the forfeiture.
And I understood him to contend, 1st. That
the limitation of two passengers for every
five tons of the vessel's measurement has
never been repealed. 2dly. That the offence
consists in taking on board. at a foreign port,
more than the legal number of passengers,
although the vessel may not bring more into
this country than the legal number. 3dly.
That the court must be guided in the investi-
gation and determination of this case by the
actual measurement of the barque. made
since her last arrival here, by witnesses who